UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MISC. NO. 09-3526-JJO

UNITED STATES OF AMERICA,

vs.

RAMON SOSA MONTERO,
ERNESTO DEL FRADE DOMINGUEZ,
RENDELIO GARCIA,
    a/k/a "Cabeza,"
ANGEL LORENZO PEREZ,
    a/k/a "Tio,"
and
RENZO MANUEL MANCINI,
    a/k/a "Quique,"

    **Defendants.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ____ Yes  _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  ____ Yes  _X_ No

    Respectfully submitted,

    JEFFREY H. SLOMAN
    ACTING UNITED STATES ATTORNEY

By: _____
    JOSEPH H. HUYNH
    Assistant United States Attorney
    Bar No.:0527939
    H.I.D.T.A.
    11200 NW 20th Street
    Miami, FL 33172
    Tel: No. (305) 715-7647
    Fax No. (305) 715-7639

AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Ramon Sosa Montero, Ernesto Del Frade Dominguez, Randelio Garcia, a/k/a "Cabeza", Angel Lorenzo Perez, a/k/a "Tio" and Renzo Manuel Mancini a/k/a "Quique" | ) Case No. 09-3526-JJO ) ) |
| Defendant s | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of 8/24/09 to 11/4/2009 in the county of Miami-Dade in the Southern District of Florida, the defendant violated 21 U.S.C. § 846, an offense described as follows:

conspired to possess with intent to distribute a controlled substance, that is, five kilograms or more of cocaine,

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

DEA Special Agent Eric C. Rice
Printed name and title

Sworn to before me and signed in my presence.

Date: 11/4/09

_____
Judge's signature

City and state: Miami, Florida

John J. O'Sullivan, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Eric C. Rice, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Miami Field Division. I have been a Special Agent for approximately nine years. During that time I have focused on investigations involving narcotics trafficking and money laundering. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA. I have conducted numerous investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. This affidavit is based upon information obtained by my own investigations as well as information provided by other law enforcement officers.

2. This affidavit is submitted for the sole purpose of supplying probable cause for the arrests of Ramon Sosa MONTERO, Ernesto Del Frade DOMINGUEZ, Rendelio GARCIA a/k/a "Cabeza," Angel Lorenzo PEREZ a/k/a "Tio," and Renzo Manuel MANCINI a/k/a "Quique" (hereinafter referred to as "MONTERO," "DOMINGUEZ," "GARCIA," "PEREZ," and "MANCINI" respectively) for conspiracy to possession with the intent to distribute over 5 kilograms of cocaine. As such, this affidavit does not contain all the facts known to me regarding this investigation.

Background of Investigation

3. Since December of 2008, DEA has been conducting a narcotics investigation in conjunction with Colombian law enforcement of drug trafficking into the United States by Colombian nationals placing narcotics on commercial airplanes destined for Miami. As part of this ongoing investigation, on August 11, 2009, DEA obtained 16 brick shaped packages weighing approximately 16 kilograms that field tested positive for the presence of cocaine.

1

A DEA undercover (UC) was to deliver the drugs to drug traffickers in Miami, Florida.

### Attempted Delivery of Cocaine to MANCINI

4. On August 24, 2009, the UC received instructions to call "Quique" (later identified as MANCINI) and setup a meeting to discuss the transportation fees for the 16 kilograms of cocaine. The UC subsequently spoke with MANCINI and met with him and a second unidentified individual (UM1) at La Carreta Restaurant located at 10633 NW 12th Street in Miami, Florida. During the meeting, MANCINI confirmed he was to pay $92,000.00 for transportation fees. MANCINI advised that he would contact the UC to arrange another meeting when he had the money. On Tuesday, August 25, 2009, MANCINI called the UC and told the UC that he would make a phone call so that the $92,000.00 would be delivered to him.

5. On August 27, 2009, the UC met with MANCINI in the parking lot of La Carreta Restaurant located at 10633 NW 12th Street, Miami, Florida where MANCINI entered the UC's vehicle and sat in the front passenger seat. MANCINI told the UC that they wanted to take four kilograms to check them and then return a short time later with the money for the rest of the kilograms of cocaine. The UC refused stating the UC would give MANCINI the sixteen kilograms of cocaine when MANCINI brought him the $92,000.00 in transportation fees. MANCINI said that the Cuban guy he was dealing with in Miami, Florida had the money but wanted to receive four kilograms of cocaine first. The UC insisted on the full amount.

### Attempted Delivery of Cocaine to PEREZ

6. On September 1, 2009, the UC obtained information that the UC would be receiving a phone call from "Tio." The next day, the UC received a phone call from "Tio" (later identified as PEREZ) who stated that he wanted to meet on September 3, 2009 to

discuss the transaction. On September 3, 2009, the UC went to meet PEREZ at La Carreta Restaurant located at 10633 NW 12th Street, Miami, Florida. There he was met by another individual recognized by law enforcement as UM1. UM1 told the UC that he was in charge of overseeing the transaction of the deal and that he was ready with the $92,000.00 in transportation fees for the shipment of 16 kilograms of cocaine. UM1 stated "Tio" (PEREZ) was in the car. PEREZ later joined them at the table where upon he introduced himself as "Tio."

7. PEREZ told the UC that he was ready to do the transaction of the 16 kilograms of cocaine. UM1 told the UC that he wanted the UC to take the 16 kilograms of cocaine to a restaurant on NW 25th Street and the Palmetto Expressway to do the exchange. The UC told UM1 and PEREZ that once they had the money to call the UC and the UC would provide a location to see the money before taking them to a location to do the exchange. PEREZ and UM1 both agreed with the UC and stated that they would call the UC within an hour. No further meeting was scheduled at that time.

8. During surveillance of that meeting with PEREZ, law enforcement observed a blue 2009 Volkswagan occupied by two individuals arrive at La Carreta. Law enforcement observed UM1 approach the UC. An inquiry revealed that the blue 2009 Volkswagen was registered to Angel Lorenzo-PEREZ. Furthermore, PEREZ was later positively identified by the UC from a Florida driver license photograph as PEREZ.

9. On October 30, 2009, the UC received information that MANCINI would have PEREZ contact the UC again to discuss the transaction. The UC received a call from PEREZ and scheduled a meeting at Don Pan Restaurant located at 4179 NW 107th Avenue, Miami, Florida. At that meeting, an unidentified male (UM2) approached the UC and shook hands. UM2 discussed with the UC taking possession of 2 of the 14 kilograms left. Two

3

kilograms had been previously distributed by the UC.

10.  After the meeting, law enforcement observed the UM2 walk away from the UC, head towards a blue Volkswagen, and enter the passenger side of the vehicle. Law enforcement identified the driver as PEREZ who met with the UC on September 23, 2009 to discuss the same transaction.

Delivery of Cocaine to MANCINI

11.  On November 1, 2009, the UC received information that that MANCINI would be arriving in Miami, Florida to meet with the UC and setup a meeting to discuss the transportation fees for the cocaine.

12.  On November 2, 2009, the UC received a phone call from MANCINI who stated he was ready to meet the UC and later called MANCINI and told MANCNI to meet him at La Carreta located at 10633 NW 12th Street, Miami, Florida. There, MANCINI advised the UC that he (MANCINI) had $6,000 to pay for the transportation fee for two kilograms of cocaine and that he (MANCINI) would return in a few hours with the remaining $42,000 to pay for the rest of the 14 kilograms of cocaine. The UC stated that he (UC) would need to get authorization to do the transaction and that the UC would call MANCINI later in the evening. On the same day, at approximately 7:00 PM, the UC called MANCINI and advised MANCINI that the UC had been authorized to do the transaction. MANCINI stated that he (MANCINI) would be ready at 9:00 AM on November 3, 2009.

13.  On November 3, 2009, at approximately 9:00 AM, MANCINI called the UC and advised the UC that he (MANCINI) was ready. At approximately 12:06 PM, MANCINI arrived at La Carreta located at 10633 NW 12 Street and met with the UC.

14.  During the meeting, MANCINI told the UC that he was going to take the two kilograms to Timbas restaurant where two Cubans were going to purchase it. MANCINI

said it would take him an hour to an hour and a half to return with the money for the remaining 12 kilograms. The UC and MANCINI walked over to the UC's vehicle and the UC opened the rear hatch. The UC then opened a black carryon bag and showed MANCINI two kilograms of sham cocaine. MANCINI then handed the UC approximately $6,000 in US currency and took possession of the black carryon bag. As MANCINI walked away with the bag, he was taken into custody.

<u>Delivery of Cocaine to PEREZ, GARCIA, MONTERO, DOMINGUEZ</u>

15.   Post-Miranda, MANCINI advised that he was to deliver the two kilograms of cocaine to PEREZ and GARCIA, who were waiting for MANCINI at GARCIA's restaurant Timbas, located at 75000 NW 25th Street, Miami, Florida. MANCINI further stated that there were two other Cuban males at the restaurant with PEREZ and GARCIA who were waiting to purchase the two kilograms of cocaine. MANCINI later identified the two Cuban males as DOMINGUEZ and MONTERO.

16.   MANCINI then placed a recorded phone call to GARCIA and advised GARCIA that MANICI had given the $6,000 to the UC and was waiting for the UC to return with the two kilograms. GARCIA asked MANCINI why MANCINI had fronted the $6,000. MANCINI stated that the UC did not think that MANCINI had the money.

17.   At approximately 1:20 PM, MANCINI called GARCIA and advised GARCIA that he (MANCINI) was in possession of the two kilograms of cocaine and was on the way back to GARCIA's restaurant (TIMBAS). GARCIA instructed MANCINI to go to the VIP area of the restaurant when he arrived.

18.   MANCINI was driven to Timbas location by the UC. Upon arrival, the UC observed PEREZ standing outside the restaurant. MANCINI entered the restaurant to deliver the two kilograms of cocaine. The UC then observed PEREZ enter the restaurant after

5

MANCINI.

19. In the restaurant, DOMINGUEZ and MONTERO were sitting at a table conversing with GARCIA who was sitting at the bar. MANCINI sat at the table with DOMINGUEZ and MONTERO and opened the black carryon bag and placed it on the table. MANCINI then removed one of the kilograms and handed to MONTERO.

20. MANCINI stated to DOMINGUEZ, MONTERO, and GARCIA that they needed to get the rest of the money fast because the guy (referring to the UC) is waiting. PEREZ, GARCIA, DOMINGUEZ and MONTERO were arrested.

21. Based upon the foregoing information, your Affiant asserts that probable cause exists to believe that Ramon Sosa MONTERO, Ernesto Del Frade DOMINGUEZ, Rendelio GARCIA a/k/a Cabeza, Angel Lorenzo PEREZ a/k/a "Tio" and Renzo Manuel MANCINI a/k/a "Quique" willingly conspired to possess with the intent to distribute fourteen kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846 and 841 (a)(1).

Eric Rice
Special Agent
Drug Enforcement Administration

SWORN TO AND SUBSCRIBED
before me this ____ day of November, 2009.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE